IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SERVCO PACIFIC, INC., a Hawaii corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SKYBRIDGE GLOBAL, INC., a Georgia corporation, and DOES 1-25, inclusive<br><br>　　　　　Defendants. | CIVIL NO. 16-00266 DKW-KSC<br><br>**ORDER: (1) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

**ORDER: (1) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

　　Servco alleges that SkyBridge failed to meet its contractual obligations to implement an Oracle software platform designed to serve Servco's automotive business.  SkyBridge moves to either transfer this action to the Northern District of Georgia, pursuant to a contractual forum selection clause, or to dismiss this action in its entirety.  Dkt. No. 27.  Because the contract on which SkyBridge relies was not executed, and there is no other basis on the facts before the Court to uphold it, SkyBridge's motion to transfer is DENIED.  Additionally, for the reasons that

follow, the Court GRANTS SkyBridge's motion to dismiss Servco's implied

covenant claim, but DENIES the motion to dismiss Servco's other five claims.

## BACKGROUND

I.   **Factual Background**[1]

A.   **Servco's Negotiations With SkyBridge**

Servco, a Hawaii corporation with its principal place of business in

Honolulu, distributes and sells automobiles, brokers specialty insurance, and

distributes appliances.  Complaint ("Compl.") ¶¶ 9, 12.  To operate its business,

Servco relies on a complex network of retail, finance, and supply chains.  *Id.* ¶ 13.

In 2012, facing the impending end of its existing legacy computer systems,

Servco began its search for a replacement.  *Id.* ¶ 14.  After consulting with Oracle

regarding its business needs, Servco selected an Oracle E-Business Suite R12.2.4

package ("Oracle EBS") and an Oracle Data Integrator ("ODI") platform.  *Id.* ¶ 15.

Oracle recommended that Servco engage a software implementer that was an

Oracle Platinum Level Partner or higher.  *Id.* ¶ 16.  Heeding that advice, Servco

contacted several software implementers, including SkyBridge, a Georgia

corporation with its principal place of business in Marietta, Georgia.  *Id.* ¶¶ 10, 17.

---

[1]The following statement of facts is primarily drawn, at times verbatim, from the allegations in Servco's Complaint, which the Court must accept as true for purposes of the Rule 12(b)(6) motion.  The facts recited are not to be construed as findings of fact that the parties may rely on in future proceedings.

Servco scheduled a three-day meeting with SkyBridge at Servco's headquarters in Hawaii on December 15, 16, and 17, 2014.  *Id.* ¶ 19.  In preparation for the meeting, Servco provided SkyBridge with information regarding its business and bill of materials.[2]  *Id.* ¶ 19.  On December 15, 2014, Servco personnel met with SkyBridge's Executive Vice President, Gurmeet Bhatia, as well as with Tim Broderick and Pramod Alluri of SkyBridge.  *Id.* ¶¶ 19, 21.  At this meeting, SkyBridge stated: "We are Oracle and PeopleSoft experts," and the company "live[s] and breathe[s] Oracle EBS and PeopleSoft."  *Id*. ¶ 21.  SkyBridge also represented that many of its consultants had more than twelve years of experience, emphasized that it was equipped to handle Servco's complex business needs, and touted its purported status as an Oracle Platinum Partner.  *Id.*  Based on these representations, and, in particular, its Platinum status, Servco selected SkyBridge as its systems integration and software project manager.  *Id.* ¶ 22.

## B.   The Contract Documents[3]

In January 2015, SkyBridge provided Servco with a draft Statement of Work ("SOW").  Declaration of John Harris ¶ 4.[4]  The SOW sets forth SkyBridge's

---

[2]The bill of materials included the ODI platform that Servco had purchased.  Compl. ¶ 19.
[3]The following facts are drawn from the declarations submitted by the parties and are relevant for purposes of determining whether venue is proper in the District of Hawaii.
[4]John Harris is Servco's Technology and Information Services' Group Vice President and Chief Information Officer.  Harris Decl. ¶ 1.  Mr. Harris was directly involved in the negotiations

services and responsibilities, which included developing and maintaining the

project plan, maintaining day-to-day project tasks, ensuring the quality and timely

completion of tasks, configuring and developing the Oracle EBS application, and

providing training.  Compl. ¶¶ 32-33.

Over the next several months, the parties negotiated the terms of the SOW

and exchanged several drafts.  *Id.* Harris Decl. ¶¶ 4-7.  On May 5, 2015,

SkyBridge claims that Mr. Bhatia emailed a final version of the SOW to Servco for

signature.  Declaration of Gurmeet S. Bhatia ¶ 15; *see also* Dkt. No. 27-3,

SkyBridge Exh. A.  Although Servco disputes that the May 5, 2015 version was

the "final" version, each side agrees that the parties executed a final SOW on May

8, 2015.  Harris Decl. ¶¶ 7-8; Bhatia Decl. ¶ 17; Compl. ¶ 30.

The final SOW cross-references a "services agreement" or what the parties

sometimes refer to as a "Master Services Agreement" ("MSA"):

> This Statement of Work ("SOW") is executed by and between
> SkyBridge Global Inc. ("Company" or "SkyBridge") and
> Servco Pacific, Inc. ("Servco") pursuant and subject to the
> terms and conditions of that certain Services Agreement [e.g.,
> the MSA] executed contemporaneously with this SOW by the
> parties (the "Agreement").

Compl., Exh. A.  The draft of the services agreement attached to Mr. Bhatia's May

5, 2015 email purports to govern the SOW and includes provisions relating to,

---

between Servco and SkyBridge relating to the implementation of the Oracle EBS software
system.  *Id.* ¶ 3.

4

among other things, the content of the SOW, the manner of billing and payment, the venue for any legal action arising out of the parties' contract, and the governing law for the interpretation and enforcement of the agreement. *See* Dkt. No. 27-5, SkyBridge Exh. C. Although SkyBridge asserts that a final version of this agreement was provided to Servco for signature, it is undisputed that no such agreement was ever signed by the parties. *See* Bhatia Decl. ¶¶ 14-15; Harris Decl. ¶¶ 5-9.

### C.   Breach of SkyBridge's Obligations Under the SOW

The SOW obligated SkyBridge to an approximate nine-month implementation schedule for the finance project and a concurrent twelve-month schedule for the distribution project. This translated to planned "go-live" dates of January 4, 2016 and April 25, 2016, respectively. *Id.* ¶ 35. SkyBridge also agreed that "[t]he project budget is not to exceed the above estimated amount [$1,991,100 for consulting services and $352,406.25 for travel expenses] unless the scope and approach of the project is changed and approved by the steering committee." *Id.* ¶ 36; Dkt. No. 39 at 14.

According to Servco, throughout 2015, SkyBridge provided repeated assurances that its work was both on track and on budget. These promises proved to be empty ones, however, as SkyBridge was unable to meet either the implementation schedule or the budget set forth in the SOW, resulting in

SkyBridge unilaterally changing the project timeline to reflect a January 6, 2017

go-live date.  *Id.* ¶¶ 37, 42.  When Servco complained, and with SkyBridge unable

to meet the SOW deadlines, the parties selected a new September 12, 2016 go-live

date, but with an agreement to evaluate the project's progress in April 2016 to

assess the project's viability.  *Id.* ¶¶ 44-45.

In April 2016, Servco opted to terminate SkyBridge because of SkyBridge's

repeated delays, inexperience, and inability to lead the project.  *Id.* ¶ 46.

## II.   <u>Procedural Background</u>

On May 26, 2016, Servco filed a Complaint, alleging the following causes of

action: (1) breach of contract (Count I); (2) breach of the implied covenant of good

faith and fair dealing (Count II); (3) fraud (Count III); (4) rescission (Count IV);

(5) unjust enrichment (Count V); and (6) declaratory relief (Count VI).  Dkt. No. 1.

Servco asserts subject matter jurisdiction based on diversity of citizenship pursuant

to 28 U.S.C. § 1332(a)(2).  *Id.*  In addition, Servco asserts that venue is proper in

the District of Hawaii pursuant to 28 U.S.C. § 1391(b) because a substantial part of

the events or omissions giving rise to its claims occurred in this district.  *Id.*

On August 11, 2016, SkyBridge filed a Motion to Dismiss or Transfer

Venue to Georgia Pursuant to Mandatory Forum Selection Clause, or, in the

alternative, Motion to Dismiss for Failure to State a Claim (Dkt. No. 27).  The

Court elected to decide the motion without a hearing pursuant to Local Rule 7.2(d).

Dkt. No. 44.

## STANDARD OF REVIEW

### I.    Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides that a Court may dismiss

a claim for improper venue.  Once venue is challenged, the plaintiff has the burden

of proving that venue is proper in this district.  *See Piedmont Label Co. v. Sun*

*Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In considering a Rule

12(b)(3) motion, the Court may consider facts outside the pleadings and need not

accept the pleadings as true.  *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408

F.3d 1250, 1254 (9th Cir. 2005).  If there are contested factual issues, the Court is

obligated to draw all reasonable inferences and resolve the factual conflicts in

favor of the non-moving party or hold a pre-trial evidentiary hearing on the

disputed facts.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–39 (9th Cir.

2004).

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is

filed a case laying venue in the wrong division or district shall dismiss, or if it be in

the interest of justice, transfer such case to any district or division in which it could

have been brought."  The Court has discretion in determining whether to transfer

or dismiss an action for improper venue. *See King v. Russell*, 963 F.2d 1301, 1304

(9th Cir.1992).

## II.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for

failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v.*

*Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554,

570 (2007)). "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id.*

Under Rule 12(b)(6), review is generally limited to the contents of the

complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

*Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, courts

may "consider certain materials—documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of judicial notice—without

converting the motion to dismiss into a motion for summary judgment." *United*

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

## I.   SkyBridge's Motion to Transfer Venue

SkyBridge moves to dismiss the Complaint or transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and the forum selection clause contained in the MSA.  As set forth below, the Court finds that Hawaii is the proper venue, and the forum selection clause is not enforceable.

### A.     Venue is Proper in the District of Hawaii

As an initial matter, SkyBridge's reliance on 28 U.S.C. § 1406(a) and Rule 12(b)(3) is misplaced.

Section 1406(a) provides for transfer from forums in which venue has been wrongly or improperly laid.  Under the general venue statute applicable to federal diversity cases, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of that property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2). "[T]he substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit[,]" *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001) (citation omitted), and can be "measured by considering the nexus between the events and the nature of the claims[.]"  *Lee v. Corr. Corp. of Am.*, 525 F. Supp. 2d 1238, 1241 (D. Haw. 2007) (citation omitted).

The instant case arises from alleged misrepresentations that SkyBridge made to Servco during the parties' negotiations, as well as SkyBridge's failure to perform certain services as agreed upon.  It is evident that the events giving rise to

the claims occurred in Hawaii.  For example, the misrepresentations at issue occurred during meetings at Servco's headquarters in Honolulu, Hawaii in December 2014.  Moreover, SkyBridge performed the contested services in Hawaii for the benefit of Servco's Hawaii operations.  As such, venue is proper in the District of Hawaii under 28 U.S.C. § 1391(b)(2).

## B. The Forum Selection Clause is Unenforceable

SkyBridge argues that venue is improper in this district because, whatever may have occurred here, the forum selection clause in the MSA designates the U.S. District Court for the Northern District of Georgia as the venue for any legal disputes involving the MSA or SOW.  Dkt. No. 27-1 at 17; *see also* Dkt. No. 27-5, SkyBridge Exh. C at 8.   The Court concludes that the forum selection clause is not binding on Servco because Servco did not sign the MSA or otherwise evidence its assent to the terms of the forum selection clause.

### 1. Applicable Law

"While federal law governs questions concerning the interpretation and enforcement of forum selection clauses, federal courts involved with diversity actions apply state law to determine whether a contract that included a forum selection clause existed in the first place." *Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1081 (C.D. Cal. 2004) (citation omitted). "In determining what state law to apply, a federal court applies the choice-of-law

10

rules of the state in which it sits." *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006) (citation omitted).  As such, the Court applies Hawaii's choice-of-law rules to determine whether Hawaii or Georgia state law governs.

Hawaii's choice-of-law rules "create[] a presumption that Hawaii law applies unless another state's law would best serve the interests of the states and persons involved." *Abramson v. Aetna Cas. & Sur. Co.,* 76 F.3d 304, 305 (9th Cir. 1996) (citation and internal quotation marks omitted).  Servco argues that SkyBridge is unable to overcome this presumption "because Hawaii has the 'most significant relationship to the parties and subject matter.'"  Dkt. No. 39 at 20 (quoting *Mikelson v. United Servs. Auto. Ass'n*, 107 Hawai'i 192, 198, 111 P.3d 601, 607 (2005)).  The Court agrees.

As previously discussed, Servco is a Hawaii corporation, and the events giving rise to Servco's claims occurred almost entirely in Hawaii.  Although SkyBridge is a Georgia corporation, this lone fact is outweighed by the others.  Because Hawaii has the most significant relationship to the parties and the subject matter, the Court applies Hawaii law to determine the enforceability of the forum selection clause within the MSA.  *See Mikelson*, 107 Hawai'i at 198, 111 P.3d at 607.

11

### 2. The Forum Selection Clause

SkyBridge relies solely on a forum selection clause found in the MSA as the basis for transferring venue to the Northern District of Georgia. SkyBridge maintains that the forum selection clause is enforceable because the MSA was incorporated by reference into the SOW. This argument is without merit.

Under Hawaii law, incorporation by reference of a document requires that the reference be "clear and unequivocal, and the terms of the incorporated document must be known or easily available to the contracting parties." *Safeway, Inc. v. Nordic PCL Constr., Inc.*, 130 Hawaiʻi 517, 527, 312 P.3d 1224, 1234 (Haw. App. 2013) (quoting 17A C.J.S. Contracts § 402 (internal quotation marks and alterations omitted)). Further, "[i]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.* (citation omitted). Determining whether there is mutual assent is not confined solely to the contractual terms, but "in combination with the surrounding circumstances presented in [the] case." *Douglass v. Pflueger Hawaii, Inc*., 110 Hawaiʻi 520, 532, 135 P.3d 129, 141 (2006). Based on this exacting standard, the Court concludes that the forum selection clause included in the MSA was not incorporated by reference into the SOW.

First, SkyBridge claims that the "final version of the SOW expressly makes reference to the MSA in its opening paragraph, and specifically incorporates the terms and conditions of the MSA with the intent to integrate those terms and conditions therein." Dkt. No. 27-1 at 20. The SOW reference relied on by SkyBridge, however, is not clear nor unequivocal, nor are the terms of the MSA readily available. *Safeway*, 130 Hawaiʻi at 527, 312 P.3d at 1234. The provision relied on by SkyBridge provides in relevant part:

> This Statement of Work ("SOW") is executed by and between SkyBridge Global Inc. ("Company" or "SkyBridge") and Servco Pacific, Inc. ("Servco") pursuant and subject to the terms and conditions of that certain Services Agreement [e.g. the MSA] executed contemporaneously with this SOW by the parties (the "Agreement").

Compl., Exh. A.

While the parties appear to have been discussing the terms of the MSA, including the forum selection clause, at the time the SOW was executed, the facts show that neither the MSA, nor any other "services agreement," was "executed contemporaneously with" the SOW or at any other time. Thus, the MSA cited by SkyBridge could not have been validly incorporated by reference. *See Uyeshiro v. Irongate Azrep BW LLC*, 2014 WL 414219, at *9 (D. Haw. Feb. 3, 2014) (finding that because a document did not exist at the time the parties executed the Sales Contract, "it was not 'easily available' when the parties signed the Sales Contract

13

and, thus, could not be incorporated by reference") (citing *Safeway*, 130 Hawai'i at 527, 312 P.3d at 1234).

Second, SkyBridge has not established that the parties "had knowledge of and assented to the incorporated terms." *Safeway*, 130 Hawai'i at 527, 312 P.3d at 1234 (citation omitted).  Indeed, Servco maintains that it never assented to the MSA, and that it "in fact requested that SkyBridge change the governing law and forum selection provisions from Georgia to Hawaii."  Dkt. No. 39 at 23 (citing Harris Decl. ¶ 9).  In other words, at least according to Servco, the very terms relied on by SkyBridge for transfer purposes were disputed negotiation points that had never been agreed upon even to this day.   That is hardly the kind of clear knowledge and assent required to validly incorporate by reference under Hawaii law.  *Douglass*, 110 Hawai'i at 532, 135 P.3d at 141; *Safeway*, 130 Hawai'i at 527, 312 P.3d at 1234.

In sum, based on the evidence before it, the Court concludes that the forum selection clause contained in the MSA was not incorporated into the SOW and has no viability.  Accordingly, the Court will not disturb Servco's proper choice of venue in the District of Hawaii.

## II.     SkyBridge's Motion to Dismiss

Servco alleges six causes of action in its Complaint, and SkyBridge seeks dismissal of all six claims.  The Court addresses each claim in turn.

14

A.   **Breach of Contract (Count I)**

Count I alleges that SkyBridge materially breached the SOW by failing to implement a functioning ERP system for Servco.  SkyBridge argues that Servco has failed to allege sufficient facts to support such a claim and that the claim is premature.  The Court disagrees.

To prevail on a claim for breach of contract, a party must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract." *Honold v. Deutsche Bank Nat'l Trust Co.,* Civ. No. 10–00625 JMS/BMK, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010) (citing *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient.")).

First, SkyBridge argues that "Servco does not identify any specific contractual provisions that were allegedly breached which, at a bare minimum, are required to put a defendant on notice of the basis for a plaintiff's claim."  Dkt. No. 27-1 at 31-32.  The Complaint, however, alleges the following:

- SkyBridge agreed to implement an "Oracle R12.2.4 Version of Oracle" ([Compl.] at ¶ 33 (citing SOW Section 2)), but failed "to deliver a working Oracle E-Business Suite computer platform" (*id*. at ¶¶ 1, 52);

15

- SkyBridge agreed to "[d]evelop and maintain the project plan and 'manage day to day project tasks'" (*id*. at ¶ 33(a) (citing SOW Section 4)), but "failed in its role as project manager" (*id*. at ¶ 52);

- SkyBridge agreed to "make sure tasks were being delivered on time and quality [sic]" (*id*. at ¶ 33(b) (citing SOW Section 4)), but "significantly delayed the agreed to implementation schedule" (*id*. at ¶ 52); and

- SkyBridge agreed that "[t]he project budget is not to exceed the above estimated amount [of $2,343,506,25]" (*id*. at ¶ 36 (citing SOW Section 6)), but "caused extreme cost overruns" (*id*. at ¶ 52).

Dkt. No. 39 at 29-30. These factual allegations meet the federal pleading standards of *Twombly* and *Iqbal* because they sufficiently place SkyBridge on notice of the basis of Servco's contractual claim.

Second, SkyBridge argues that Servco's breach of contract claim fails because SkyBridge's time for performance was not yet due at the time Servco filed its Complaint. Dkt. 27-1 at 32. Under the facts alleged, SkyBridge's failure to perform is actionable.

Here, the Complaint alleges that SkyBridge contractually agreed to the January 4, 2016 and April 2016 "go-live" dates under the SOW, but failed to meet those deadlines "due to SkyBridge's inadequate resources, staffing issues, and lack of project management." Compl. ¶¶ 3, 35-39. That alone renders Servco's May 26, 2016 filing timely.

16

According to Servco, SkyBridge first gave itself an extension of time until January 6, 2017. *Id.* ¶¶ 42, 44. When pressed, SkyBridge advanced its unilaterally selected deadline to September 12, 2016. *Id.* ¶ 44. Regardless of whether either of these dates was mutually agreed to, Servco alleges that the parties agreed to re-evaluate progress at the end of April 2016 to determine the project's viability. *Id.* ¶ 45. It was at that point in time, still dissatisfied with SkyBridge's contract performance, diligence, expertise, and management, that "Servco was forced to put the project on hold and terminate its relationship with SkyBridge in April 2016." *Id.* ¶ 46. In other words, even under this version or extension of the facts, the Complaint is timely.

By May 2016, SkyBridge had already missed the initial agreed upon "go-live" date of January 4, 2016 set forth in the SOW. By April 2016, it was apparent to Servco that SkyBridge was continuing to fail to meet its obligations under the SOW, which included maintaining the project plan, managing day-to-day project tasks, and ensuring the timely deliverance and quality of tasks. Under these circumstances, Servco was not required to wait until September 12, 2016 to initiate an action against SkyBridge for failing to meet its obligations under the SOW. *See Commercial Contractors, Inc. v. U.S. Fidelity Guar. Co.*, 524 F.2d 944, 955 (5th Cir. 1975) (finding that a party can be found in breach if, "notwithstanding

extensions, substantial performance would not have been delivered by the date of the new schedule deadline").

## B.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II alleges that Skybridge's actions breached the covenant of good faith and fair dealing.  Skybridge argues that this claim should be dismissed because it does not provide an independent basis for liability.  The Court agrees.

Under Hawaii law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of benefits of the agreement."  *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawaiʻi 120, 920 P.2d 334, 337-38 (1996).  This district court has noted that the tort of breach of the covenant of good faith and fair dealing has not been recognized in Hawaiʻi outside of the insurance context.  *See Phillips v. Bank of America*, Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *5 (D. Haw. Jan. 21, 2011).  Because no insurance contract is at issue here, Servco has no basis for the type of breach of the covenant claim asserted.

Although Servco contends that its claim "sounds in contract, not tort," Dkt. No. 39 at 34, "[b]reach of the implied covenant of good faith is not its own claim but merely part of a breach of contract analysis."  *Lynch v. Federal Nat'l Mortg. Assoc.*, CIVIL NO. 16-00213, 2016 WL 6776283, at *9 (D. Haw. Nov. 16, 2016)

(citing *Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A*, 459 F. Supp. 2d 1028, 1037 (D. Haw. 2006)).

Accordingly, SkyBridge's Motion to Dismiss is GRANTED as to Count II. Because amendment would be futile, dismissal of Count II is without leave to amend.

## C.   Fraud (Count III)

Count III alleges that SkyBridge committed fraud.  Both parties acknowledge the heightened pleading standard required to maintain this claim under Fed. R. Civ. P. 9(b).  SkyBridge argues that Servco's fraud claim fails to satisfy Rule 9(b), or alternatively, is barred by both the gist of the action and merger doctrines.  As set forth below, SkyBridge's arguments lack merit.

### 1.   Servco's Fraud Claim Satisfies Rule 9(b)

Allegations of fraudulent conduct are sufficient under Fed. R. Civ. P. 9(b) only if they "identif[y] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations and quotations omitted). Thus, "[i]n order to sufficiently plead a fraud claim, [Servco] 'must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice.'" *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1055 (D. Haw.

2011) (quoting *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted)).

First, the Court rejects SkyBridge's argument that Servco's fraud claim falls short of Rule 9(b)'s particularized pleading requirement.  Here, the Complaint identifies with specificity SkyBridge's misrepresentations about its qualifications that form the basis of Servco's fraud claim.  For example, the Complaint alleges that at a December 15, 2014 meeting, SkyBridge represented that it had been an Oracle Platinum Partner for almost five years, continued to tout this alleged status, and even represented on its website that it was an Oracle "expert."  The Complaint further alleges that Oracle itself had advised Servco to engage a software implementer with Platinum status, and that Servco relied on such representations in selecting SkyBridge, only to subsequently learn that SkyBridge's representations in that regard were false.  The Court concludes that the allegations regarding SkyBridge's representations about its Platinum status sufficiently plead fraud with the particularity required by Rule 9(b).  Servco provides sufficient details, including the date of the meetings when the misrepresentations were made, the parties involved at those meetings, and the basis for why the statements are false.

Second, the Court also rejects SkyBridge's argument that Servco failed to sufficiently allege the elements of a claim for fraud in the inducement.  "To state a claim for fraudulent inducement, a plaintiff must allege (1) a representation of a

20

material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his or her damage." *Peace Software, Inc. v. Hawaiian Elec. Co.*, No. CIV. 09-00408 SOM/LEK, 2009 WL 3923350, at *4 (D. Haw. Nov. 17, 2009) (citing *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawaiʻi 213, 230, 11 P.3d 1, 18 (2000)).

SkyBridge argues that Servco's fraudulent inducement claim fails because "there are no allegations that SkyBridge had no intention of performing under the SOW when the parties first entered the contract." Dkt. No. 27-1 at 37.  SkyBridge mischaracterizes Servco's fraud claim.  Here, as Servco points out, Servco's fraud claim is based on SkyBridge's false statements about its past and existing qualifications, which induced Servco to select SkyBridge and enter into the SOW. Under Hawaii law, false representations that relate to a past or existing material fact are actionable in fraud.  *See Pancakes of Haw. Inc. v. Pomare Props. Corp.*, 85 Hawaiʻi 300, 312, 944 P.2d 97, 109 (Haw. App. 1997).  Accordingly, Servco has properly alleged fraudulent inducement under Hawaii law.

### 2.    Servco's Fraud Claim is Not Barred by the Gist of the Action or Merger Doctrines

SkyBridge argues that Servco's fraud claim is barred by the "gist of the action" doctrine, or alternatively, the merger doctrine.  The Court disagrees.

The gist of the action doctrine bars a plaintiff from recasting ordinary breach of contract claims into tort claims. *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010)*; see also Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004) (stating that the gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort"). It is unclear whether Hawaii recognizes this doctrine, but it is inapplicable even if it did.[5]

Here, Servco's fraud claim is based on SkyBridge's false statements regarding its qualifications, which induced Servco to assent to the SOW to its detriment. *See, e.g.*, Compl. ¶¶ 21, 26, 59. Moreover, Servco incurred damages separate and distinct from those stemming from its breach of contract claim "relating to software licensing fees, costs to mitigate Servco's continuing damages, continued implementation costs, lost opportunity costs and consequential damages." Dkt. No. 39 at 39 n.14 (citing Compl. ¶ 5). Because Servco's fraud claim stems from SkyBridge fraudulently inducing Servco to enter into the SOW, the claim sounds in tort, rather than in contract, and thus would be permitted even in jurisdictions applying the gist of the action doctrine. *See Jou v. Siu*, 2013 WL 1187559, at *3 (Haw. App. Mar. 22, 2013); *Francis v. Lee Enter., Inc.*, 89 Hawai'i

---

[5]The Court notes that HRS § 663-1.2 provides that "[n]o person may recover damages, including punitive damages, in tort for a breach of contract in the absence of conduct that: (1) [v]iolated a duty that is independently recognized by principles of tort law; and (2) [t]ranscended the breach of the contract." HRS § 663-1.2.

234, 242, 971 P.2d 707, 715 (1999) ("[T]he existence of a contract will not defeat otherwise valid claims for relief sounding in tort, such as fraud[.]").

SkyBridge's reliance on the merger doctrine is also misplaced because it relies on the premise that there is a valid merger clause.  The merger clause here appears in the unsigned MSA, which as previously discussed was not incorporated into the SOW.  As such, without a valid merger clause, the merger doctrine does nothing to bar Servco's fraud claim.  Accordingly, SkyBridge's Motion to Dismiss is DENIED as to Count III.

### D.     Rescission (Count IV) & Unjust Enrichment (Count V)

Counts IV and V allege rescission and unjust enrichment, respectively. SkyBridge argues that these claims are improper due to Servco's simultaneous assertion of a breach of contract claim.  Federal and Hawaii state law, however, permit pleading in the alternative.

Rule 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency[,"] and Hawaii courts have specifically recognized that pleadings in the alternative are permitted.  *See Bischoff v. Cook*, 118 Hawaiʻi 154, 162, 185 P.3d 902, 910 (Haw. App. 2008) ("Under Hawaii's liberalized rules of pleading and procedure, a party may state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds or on both.") (citation, internal quotation marks, and

brackets omitted); *see also Adams v. Dole Food Co., Inc.*, 132 Hawai'i 478, 486, 323 P.3d 122, 130 (Haw. App. 2014).  Accordingly, dismissal of Servco's claims for rescission and unjust enrichment is not appropriate at this stage of the proceedings.  SkyBridge's Motion to Dismiss is DENIED as to Counts IV and V.

### E.    Declaratory Relief (Count VI)

Count VI alleges declaratory relief, which SkyBridge argues is duplicative of Servco's other claims, and, in particular, of Servco's breach of contract claim. The Court disagrees that Count VI is superfluous.

"When a claim for declaratory relief is in federal court based on diversity of citizenship, the question whether to exercise federal jurisdiction to resolve the controversy becomes a procedural question of federal law."  *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1996), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc). State law controls the substantive issues in those declaratory judgment actions.  *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1072 (S.D. Cal. 2011).  Accordingly, the Court applies federal procedural law to determine whether to dismiss the declaratory relief claim.

Under federal procedural law, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and

controversy faced by the parties." *United States v Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). "[C]ourts have dismissed companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate." *Davis v. Capitol Records, LLC*, No. 12-cv-1602, 2013 WL 1701746, at *3-4 (N.D. Cal. Apr. 18, 2013). Declaratory relief is appropriate, however, "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006).

Here, Servco's breach of contract claim, which the Court has deemed viable, seeks damages for "SkyBridge's material breaches" under the SOW. Compl. ¶ 53. Those damages consist of "fees and expenses paid to SkyBridge, software license fees, costs to Servco to complete the project, and additional damages to be proved at or before trial." *Id.* Meanwhile, Servco's declaratory relief claim alleges in relevant part:

> An actual controversy has arisen and now exists between Servco and SkyBridge, in that Servco contends that SkyBridge fraudulently induced Servco to sign the SOW and thereafter materially breached its obligations under the SOW, such that Servco is not required to compensate SkyBridge for any services provided in connection with the SOW. Servco is informed and believes, and on that basis alleges, that SkyBridge disputes Servco's position.

Compl. ¶ 73.

Servco's declaratory relief claim is not plainly duplicative of its breach of contract claim because the two seek different remedies.  Servco's breach of contract claim seeks damages for SkyBridge's material breaches under the SOW, whereas Servco's declaratory relief claim seeks a declaration that it is not required to compensate SkyBridge for any services provided in connection with the SOW. *Compare* Compl. ¶ 53 *with* Compl. ¶ 73.  The declaratory relief claim is therefore not superfluous or redundant, and the Court DENIES SkyBridge's Motion to Dismiss Count VI.

**CONCLUSION**

The Court DENIES SkyBridge's Motion to Transfer Venue, GRANTS Skybridge's Motion to Dismiss Count II without leave to amend, and DENIES the Motion to Dismiss in all other respects.

IT IS SO ORDERED.

DATED:  November 29, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

Servco Pacific, Inc.  v. SkyBridge Global, Inc.; CV 16-266 DKW-KSC; **ORDER: (1) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**